UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBORAH GOLDMAN,

        Plaintiff,

Case No. 13-14395

Honorable John Corbett O'Meara

v.

WAYNE STATE UNIVERSITY, *et. al.*,

        Defendants.

_____/

## OPINION AND ORDER
### GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEF, AND GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

This matter came before the court on the following motions: defendant Belle Fountain Nursing and Rehabilitation Center's February 23, 2015 motion for summary judgment; defendants Patricia Morris and Rehabilitation Masters' March 16, 2015 motion for summary judgment; defendants Wayne State University, Dean Howard Normile, and Provost Ronald Brown's March 16, 2015 motion for summary judgment; and plaintiff Deborah Goldman's June 19, 2015 motion for leave to file a supplemental brief. The motions were fully briefed; and oral argument was heard July 30, 2015.

### BACKGROUND FACTS

Plaintiff Deborah Goldman is a former student of defendant Wayne State University's ("WSU") Master's Degree-level occupational therapy program (the "MOT" program). This case arises out of Plaintiff's dismissal from her second fieldwork placement during the time she was enrolled at WSU, her concurrent dismissal from the MOT program, and WSU's ultimate decision not to reinstate her.

WSU's MOT students are required to complete classroom work followed by several fieldwork assignments at different locations. Pursuant to an affiliation agreement, defendant Rehabilitation Masters, Inc. ("RMI") provides supervision to MOT students during their fieldwork placements. The agreement between WSU and RMI expressly provides that neither party "is the agent, employee or servant of the other, and each is responsible for its own conduct." Defs.' Ex. B, p. 5. RMI in turn contracts to provide rehabilitation services to various facilities, one of which is defendant Belle Fountain Nursing and Rehabilitation Center ("BFN"). Defendant Patricia Morris is a registered occupational therapist employed by RMI and was assigned to the BFN facility at all relevant times. Defendants Dean Howard Normile and Provost Ronald Brown were employees of WSU at all relevant times.

Plaintiff Goldman is an Orthodox Jewish woman. During her first fieldwork placement, she requested to leave before sundown on Fridays for the Sabbath and to be absent on Rosh Hashannah. Likewise, for her second fieldwork placement at BFN, Plaintiff advised the program of her need for time off for Jewish holidays. She requested and received permission to leave one hour early on September 25 and to miss the days of September 26, and October 1, 2, 8 and 9. She also requested time off November 12 to attend her brother-in-law's wedding. She further requested to leave one hour early on Fridays in November and December so that she would be home by sundown. All of Plaintiff's requests for time off were granted, and she was told she could make up the time by extending her fieldwork placement to December 28. Her requests were also accommodated during her placement at BFN when her work hours were changed from 7:00 a.m. - 3:00 p.m. to 7:30 a.m. - 3:00 p.m.

Plaintiff admits that she received negative feedback regarding her work performance from defendant Morris during her fieldwork at BFN. In fact, Plaintiff has testified that she received too much feedback from Morris. Defs.' Ex. A, pp. 85-88; Ex. D, p. 66. Plaintiff's performance issues culminated in a meeting with Plaintiff, defendant Morris, and Dr. Nancy Milligan (not a party to this action) on October 24, 2012. Prior to the meeting Morris and Milligan privately discussed concern regarding Plaintiff's performance and professional behavioral issues. The two intended to establish a remediation plan and deliver it to Plaintiff. Defendants claim that during the meeting, Morris "reviewed Plaintiff's deficiencies regarding documentation of patient evaluations; her improper techniques and methods of evaluating patients; her inability to engage patients; the fact that she did not seem to have her priorities together regarding being able to focus on her fieldwork; and her lack of flexibility." Defs.' Mot. Br. at 9-10.

The parties agree that meeting became heated and that Plaintiff became emotional. Defendants contend that Plaintiff's conduct "was so unprofessional and the meeting became so unproductive that Ms. Morris felt that working with Plaintiff to establish a remediation program would be impossible. She thus informed Plaintiff that she was terminated from her fieldwork placement." Id. at 10. Pursuant to MOT policy, Plaintiff's dismissal by Morris automatically terminated Plaintiff from the MOT program. Dr. Milligan reminded Plaintiff of WSU's appeals process and advised Plaintiff that she should meet with her on or before November 7, 2012. Defendants state that at the end of the meeting, Plaintiff proclaimed that she was being dismissed because she was Jewish.

Plaintiff subsequently filed an appeal of her dismissal. In her appeal letter, Plaintiff wrote:

> I realize I was unsuccessful in the placement and this letter outlines my thoughts regarding how I can address any flaws in my performance at Belle Fountain. . . .

3

> Obviously, things did not go well for me at Belle Fountain and I need to use that experience as a learning tool to better improve my professional behavior.

Defs.' Ex. R. at 1. Plaintiff further stated her belief that "the facility's initial impression of me was unfavorable because I had to take off these initial days of observance of the Jewish Holidays. This intangible may have unfairly and adversely affected the facility's initial impression of my abilities and attitude." Id. at 2. In addition, however, Plaintiff had this to say about her work attitude:

> I was also informed by Dr. Milligan and Ms. Morris that my work attitude towards my supervisor was argumentative. Obviously, it hurts to be told of a personality fault, but I appreciate their feedback and I have taken the criticism to heart. I have arranged to meet with and work with a psychologist 'coach' to better hone my interpersonal skills, especially in a workplace setting. I will work with her on how to address stressful situations in an objective, non-confrontational manner. Again, I appreciate learning, at this early juncture in my OT career, about this character flaw. I am aware of it and now have an opportunity to use coping and communication strategies to avoid appearing confrontational or argumentative.

Id. at 3.

On November 7, 2012, Plaintiff attended her scheduled meeting with Dr. Milligan. Plaintiff admitted that things may have gotten out of hand during the October 24 meeting, that she may have been yelling or screaming, and that maybe she should have been less argumentative. Defs.' Ex. D at 102-03. The faculty then voted to deny Plaintiff's appeal. Although she failed to appeal the faculty's decision in a timely fashion, WSU waived the deadline requirement and allowed her to continue with the appeals process. Plaintiff appealed to Dean Howard Normile and had a telephone conference with him, along with her attorney. The bases for Plaintiff's appeal were her belief that she was dismissed by BFN because she took religious holidays and her assertion that she was not given a warning before her dismissal. Dean Normile denied the appeal, finding no evidence that her dismissal was based on her religious beliefs. Instead, he concluded that her dismissal was performance based.

Plaintiff submitted a final appeal to Provost Ronald Brown, again alleging religious discrimination. Pursuant to standard protocol, the appeal was referred to Joseph Rankin, Interim Associate Provost and Associate Vice President for Undergraduate Affairs. Ultimately, Rankin too found no evidence that Plaintiff was dismissed due to her religious beliefs and found that her dismissal was based on poor performance at BFN. Rankin noted that there is no policy requiring a formal warning before dismissal and that Plaintiff had received ample verbal feedback regarding her poor performance. Rankin's decision finalized Plaintiff's termination from the MOT program.

Plaintiff Goldman filed a four-count, amended complaint alleging the following causes of action: Count I, violations of First and Fourteenth Amendment to United States Constitution; Count II, violations of Michigan's Elliot-Larsen Civil Rights Act ("ELCRA"); Count III, tortious interference with a business expectancy; and Count IV, violations of Fifth And Fourteenth Amendment Due Process Rights.

## LAW AND ANALYSIS

### I. WSU, HOWARD AND BROWN'S MOTION FOR SUMMARY JUDGMENT

Although Provost Ronald Brown is named as a defendant, he had no involvement in the appeals process or the decision to deny Plaintiff reinstatement. Therefore, he is entitled to dismissal from this action.

The statute allowing an individual to enforce his or her constitutional rights is 42 U.S.C. § 1983. State and governmental entities that are considered "arms of the State" and their officials acting in their official capacities are not considered "persons" for purposes of § 1983. Will v. Michigan Dep't State Police, 491 U.S. 58 (1959). State universities are governmental entities considered to be arms of the state. Javetz v. Board of Control, GVSU, 903 F. Supp. 1181, 1186

(W.D. Mich. 1995). Likewise, neither defendants Normile or Brown in their official capacities are subject to liability under § 1983, and all of their actions were taken within the scope of their employment. Dismissal of these defendants is also warranted because it is well-settled that no *respondeat superior* liability exists under § 1983. Monell v. Department of Social Servs., 436 U.S. 658 (1978).

In this case there is no evidence to support a finding that the WSU defendants violated Plaintiff's First Amendment rights. To the extent Plaintiff claims Defendants prohibited her from freely exercising her religious beliefs, her claims are without merit, as all of her many requests for time off for religious purposes were granted; and her schedule was further modified to accommodate her requests.

Plaintiff also alleges a retaliation claim. In order to establish a claim of retaliation under § 1983, a plaintiff must establish the following: 1) she was engaged in a constitutionally protected activity; 2) she was subject to an adverse action that would deter a person of ordinary firmness from continuing to engage in such activity; and 3) the protected activity was at least a motivating factor in the adverse action. Thaddieu-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999).

Plaintiff alleges that her time off work for religious purposes constituted protected activity. However, to the extent she engaged in that activity, she cannot establish that she was subject to any adverse action that would deter a person of ordinary firmness from continuing to engage in such activity. There is no dispute that Plaintiff not only continued to practice the tenants of her religion, she also continued to ask for time off and those requests were granted.

In order to establish that the alleged protected activity was a motivating factor for the alleged adverse action, a plaintiff must point to specific allegations reasonably linking her protected activity

to the adverse action. Rodgers v. Banks, 344 F.3d 587, 602 (6th Cir. 2003). Mere speculation is insufficient to survive a motion for summary judgment, and temporal proximity alone cannot establish an adverse action. Buchko v. County of Monroe, 506 Fed. Appx. 400, 404-06 (6th Cir. 2012). In this case plaintiff Goldman speculates that her dismissal from her fieldwork placement and expulsion from WSU were based on her religion. She testified that she cannot say what made her feel like she was discriminated against--it was "just a feeling." Defs.' Ex. A, p. 154.

Even if Plaintiff could establish that she engaged in protected activity, Defendants would have denied her appeal based on her performance and behavioral problems, which Plaintiff admitted to in her appeal process. For all these reasons, Defendants are entitled to summary judgment on Plaintiff's constitutional claims.

As for her ELCRA claim, Plaintiff alleges that her devotion to her religion was a motivating factor in Morris' decision to dismiss her from the MOT program and that the WSU defendants discriminated against her on the basis of her religion by refusing to overturn this decision. In order to establish a *prima facie* case of discrimination, a plaintiff must show the following: 1) she belongs to a protected class; 2) she suffered an adverse action; 3) she was otherwise qualified; and 4) she was treated differently than similarly situated individuals outside the protected class. Zwick v. Regents of the Univ. of Mich., 2008 U.S. Dist. LEXIS 34472, *29-30 (E.D. Mich. 2008). The burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse action. Once a legitimate reason is established, the burden shifts back to the plaintiff, who must prove the reason is mere pretext for discrimination. Id.

Assuming Plaintiff has established the first three elements, she has failed to allege that Defendants treated her differently from any similarly situated students outside her protected class.

In fact, the evidence contradicts that Orthodox Jewish students were treated less favorably than Plaintiff. Four students, including Plaintiff, were dismissed from Plaintiff's class. Two of them, including Plaintiff, were Orthodox Jews. Out of the four dismissed students, two were reinstated; and one of them was an Orthodox Jewish woman.

Even if Plaintiff were able to establish a *prima facie* case, Defendants were exercising their academic judgment in denying Plaintiff's appeal, and there is no evidence of departure from academic norms. Therefore, Defendants had legitimate reasons for Plaintiff's dismissal-- shortcomings in performance and behavioral issues which Plaintiff admitted to in her appeal letters. Plaintiff has presented no evidence to show that Defendants' stated reasons for her dismissal were mere pretext to mask discrimination based on her religion.

Count III of the amended complaint, which alleges tortious interference with a business expectancy, is not alleged against these defendants.

In Count IV, Plaintiff alleges violations of her due process rights pursuant to the Fifth and Fourteenth Amendments. She asserts that she had a property interest in completing her education at WSU and that her expulsion was arbitrary and capricious and motivated by bad faith. She also alleges that she was not provided sufficient notice and not allowed an opportunity to adequately respond. To the extent Plaintiff alleges these claims under 42 U.S.C. § 1983, Defendants WSU, Dean Normile and Provost Brown are entitled to summary judgment in their official capacities for the reasons stated above.

In the alternative, these defendants are entitled to qualified immunity, where the conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. See Cagle v. Gilley, 957 F.2d 1347, 1348 (6th Cir. 1992). In Varlesi v. Wayne State

Univ., 909 F. Supp. 2d 827 (E.D. Mich. 2012), this court dismissed the plaintiff student's substantive and procedural due process claims against individual university defendants relating to her dismissal from a social work program. The court noted that at the time of her dismissal, the student did not have a clearly established constitutional right in continued enrollment at the university; therefore, the court found that comparable defendants at this same institution were entitled to qualified immunity.

Plaintiff's substantive due process claim alleges a property interest in completing her education at WSU; however, courts have held that is not an interest protected by substantive due process. Bell v. Ohio State Univ., 351 F.3d 240, 249-51 (6th Cir. 2003).

In order to establish a procedural due process claim, a plaintiff must establish the following: 1) a liberty or property interest, and 2) the deprivation of any such interest occurred without due process. Picozzi v. Sandalow, 623 F. Supp. 1571, 1575 (E.D. Mich 1986). Courts are divided whether a graduate level student has a property interest in continued enrollment in his or her school. However, assuming plaintiff Goldman had such an interest, she received the due process she was entitled to. When a student is dismissed from a program, due process requirements are met "when the student has been fully informed of the faculty's dissatisfaction with the student's academic progress and when the decision to dismiss was careful and deliberate." Ku v. State of Tenn., 322 F.3d 431, 437 (6th Cir. 2003). A hearing is not required. Rather, it is sufficient that there was an "informal give and take" between the student and the university. Board of Curators of Univ. of Mo. v. Horowitz, 435 U.S. 78, 85-86 (1978).

In this case Plaintiff was fully advised of her poor performance before her dismissal and during the October 24 and November 7 meetings. Following the meetings she was provided with

documentation giving reasons for her dismissal, reasons which she has since acknowledged were indeed shortcomings. Plaintiff was given the opportunity to appeal the decision, and her appeal was considered by different sources on three levels. Furthermore, WSU accepted her appeal and allowed her to proceed through the entire appeal process despite the fact that her initial appeal was untimely. The appeal process of which Plaintiff availed herself was more than sufficient to comply with procedural due process requirements. Therefore, the WSU defendants are entitled to summary judgment.

## II. DEFENDANTS MORRIS AND RMI'S MOTION FOR SUMMARY JUDGMENT

Pursuant to an affiliation agreement, defendant RMI was to provide supervision to WSU's OT students during their fieldwork placements. Defendant Patricia Morris, who supervised Plaintiff's fieldwork at BFN, is a registered occupational therapist employed by RMI. The affiliation agreement expressly provides that neither WSU nor RMI "is the agent, employee or servant of the other, and each is responsible for its own conduct." Defs.' Ex. B, p. 5.

Plaintiff alleges her First and Fourteenth Amendment violations against these defendants, like the WSU defendants, pursuant to 42 U.S.C. § 1983. However, defendants RMI and Morris are private, not state, actors. A private actor can be considered to be acting under color of state law under the following circumstances: 1) the private entity has exercised powers that are traditionally the exclusive prerogative of the state; 2) the private party has acted with the help of or in concert with state officials; or 3) the state has so far insinuated itself into a position of interdependence with the acting party that is must be recognized as a joint participant in the challenged activity. Blum v. Yaretsky, 457 U.S. 991, 1004-05 (1982).

In his case defendant Morris was the sole decision maker in Plaintiff's dismissal from her fieldwork assignment through RMI. WSU did not oversee Morris' supervision of Plaintiff, and only Morris had the authority to dismiss Plaintiff while she was at RMI. Under these circumstances, defendants RMI and Morris cannot be deemed state actors. However, even if they were, for the reasons stated in the previous section, there were no First and Fourteenth Amendment violations.

Likewise, defendants RMI and Morris are not agents of WSU for purposes of Michigan's ELCRA. This court has previously held that a plaintiff-student had no ELCRA claim against the facility to which she was assigned to do her fieldwork internship because the facility was not an "agent" of WSU. Varlesi v. Wayne State Univ., supra, at 843.

Count III of the amended complaint alleges tortious interference with a business expectancy against these defendants, as well as against BFN. To establish such a claim, a plaintiff must demonstrate "the existence of a valid business relationship or expectancy, knowledge of the relationship or expectancy on the part of the defendant, an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and resultant damage to the plaintiff." Mino v. Clio Sch. Dist., 255 Mich. App. 60, 78 (2003). In addition, a plaintiff must prove that a lawful act was done with malice and without justification by specifically demonstrating "affirmative acts by the defendant that corroborate the improper motive of the interference. Where the defendant's actions were motivated by legitimate business reasons, its actions would not constitute improper motive or interference." Id. A business relationship need to be "proved with some degree of specificity, at least to the point that future profit be a realistic expectation and not merely wishful thinking. Joba Const. Co., Inc. v. Burns & Roe, Inc., 121 Mich. App. 615, 634-45 (1982).

In this case Plaintiff has testified that her "business expectancy" was graduating. Defs.' Ex. D, p. 165. That expectancy is nothing more than the hope of graduating and obtaining an unidentified job with an unidentified employer. Plaintiff has failed to plead the existence, current or future, of a specific business relationship, let alone that Defendants intentionally caused a breach of that relationship. There exists no genuine issue of material fact on Plaintiff's tortious interference claim because she had only "a subjective expectation of entering into a [business] relationship." Compuware Corp. V. International Bus. Machines, 259 F. Supp. 2d 597, 604 (E.D. Mich. 2002).

For all the reasons set forth in the court's decision on the WSU defendants' motion for summary judgment, these defendants are also entitled to summary judgment on Plaintiff's procedural and substantive due process claims.

## III. DEFENDANT BELLE FOUNTAIN'S MOTION FOR SUMMARY JUDGMENT

Defendant BFN is a rehabilitation center specializing in knee, hip and stroke rehabilitation. It contracts with defendant RMI to provide BFN with physical, occupational and speech therapists to staff and operate its rehabilitation department. BFN does not employ, supervise or oversee any RMI staff that provides these rehabilitation services. The WSU students who are assigned to work with RMI and its staff at various facilities do so pursuant to RMI's affiliation agreement with WSU. BFN has no involvement with the affiliation agreement or in training WSU students, and no BFN employee had any input on Plaintiff's dismissal from the WSU program. Furthermore, BFN has no involvement in the planning, administering or supervising of WSU's program. For these reasons, Plaintiff's claims against BFN are even weaker than the claims against the other defendants. The court finds that BFN cannot be deemed a state actor for claims brought under 42 U.S.C. § 1983, and

are not agents under Michigan's ELCRA. For the reasons stated above, defendant BFN is also entitled to summary judgment on all of Plaintiff's claims.

## ORDER

It is hereby **ORDERED** that plaintiff Deborah Goldman's June 19, 2015 motion for leave to file a supplemental brief is **GRANTED.**

It is further **ORDERED** that defendant Belle Fountain Nursing and Rehabilitation Center's February 23, 2015 motion for summary judgment is **GRANTED.**

It is further **ORDERED** that defendants Wayne State University, Dean Howard Normile, and Provost Ronald Brown's March 16, 2015 motion for summary judgment is **GRANTED.**

It is further **ORDERED** that defendants Patricia Morris and Rehabilitation Masters' March 16, 2015 motion for summary judgment is **GRANTED.**

                s/John Corbett O'Meara
                United States District Judge

Date: August 18, 2015

I hereby certify that a copy of the foregoing document was served upon counsel of record on this date, August 18, 2015, using the ECF system.

                s/William Barkholz
                Case Manager